IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------

HERMAN CRUZ,

                Plaintiff,

   -v.-                                  9:05-CV-1067
                                           (FJS/DEP)

M. CHURCH, Correctional Officer,
Upstate Correctional Facility, *et al.*,

                Defendants.

---------------------------------------------------------------------------

APPEARANCES:                 OF COUNSEL:

FOR PLAINTIFF:

HERMAN CRUZ, *pro se*

FOR DEFENDANTS:

HON. ANDREW M. CUOMO        STEPHEN M. KERWIN, ESQ.
Office of the Attorney General
State of New York
Department of Law
The Capitol
Albany, New York 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

                REPORT AND RECOMMENDATION

      Plaintiff Herman Cruz, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis,* has commenced this action

pursuant to 42 U.S.C. § 1983 against various corrections officials employed by the New York State Department of Correctional Services ("DOCS"), complaining of the alleged deprivation of his civil rights occurring during the period of his incarceration.  In his complaint, plaintiff claims that he was assaulted by the six named defendants, was denied meals on isolated occasions, and was issued a misbehavior report in retaliation for having filed a grievance complaining of actions on the part of certain corrections officials.  As relief, plaintiff seeks recovery of compensatory and punitive damages.

Currently pending before the court is a motion by defendants seeking the entry of summary judgment dismissing plaintiff's complaint in its entirety.  In their motion, defendants urge the court to reject the plaintiff's version of the relevant events as facially incredible and determine that no reasonable factfinder could find in his favor on the three claims asserted.

Having carefully reviewed the record now before the court, informed by the arguments raised by the defendants, I conclude that dismissal of plaintiff's excessive force claims is precluded by the existence of genuine, triable issues of material fact, but that defendants are entitled to dismissal

2

of plaintiff's retaliation and food deprivation claims, and therefore recommend that defendants' motion be granted, in part, but otherwise denied.

I.    BACKGROUND[1]

Plaintiff is a prison inmate entrusted to the custody of the DOCS. Complaint (Dkt. No. 1) at p. 1.  At the times relevant to his claims plaintiff was designated to the Upstate Correctional Facility, located Malone, New York.[2]  *Id.*

On June 5, 2005, while confined within the special housing unit ("SHU") at Upstate, plaintiff intentionally started a fire in his cell. Complaint (Dkt. No. 1) at p. 6.  The avowed purpose for setting the fire was plaintiff's desire to either commit suicide or be transferred out of the Upstate SHU.  *Id.*; *see also* Cruz Decl. (Dkt. No. 55-3) ¶ 16.  Once the fire

_____

[1]    In light of the procedural posture of the case the following recitation is derived from the record now before the court, with all inferences drawn, and ambiguities resolved, in favor of the plaintiff.  *See Wells-Williams v. Kingsboro Psychiatric Ctr.*, No. 03-CV-134, 2007 WL 1011545, at *2 (E.D.N.Y. Mar. 30, 2007) (citations omitted).  It should be noted, however, that many if not most of plaintiff's allegations are sharply contested by the defendants.

[2]    Upstate is a maximum security prison comprised exclusively of special housing unit ("SHU") cells in which inmates are confined, generally though not always for disciplinary reasons, for twenty-three hours each day.  *See Samuels v. Selsky*, No. 01 CIV. 8235, 2002 WL 31040370, at *4 n.11 (S.D.N.Y. Sept. 12, 2002).

was extinguished by prison officials, Cruz was transferred into the facility's mental health unit and placed on special watch.  Complaint (Dkt. No. 1) at p. 6; *see also* Cruz Decl. (Dkt. No. 55-3) Exh. 4-A.  At approximately 6:30 pm on that date plaintiff was examined for physical injuries; during that inspection no injuries were discerned, and plaintiff denied having suffered any.  Viglucci Aff. (Dkt. No. 53-6) Exh. E; *see also* Cruz Aff. (Dkt. No. 55-3) Exh. 4-A.

It is at this point that the parties' versions of the relevant events diverge.  Plaintiff maintains that after his admission into the mental health unit and ensuing medical examination, defendants Baker, Russell, Patterson, Gill, Church and Vann came into his room and assaulted him, punching and kicking him and causing him to suffer a broken rib. Complaint (Dkt. No. 1) at p. 6; *see also* Cruz Decl. (Dkt. No. 55-3) ¶ 13. Defendants Baker, Gill, Patterson and Russell, by contrast, have submitted affidavits in which they deny having assaulted the plaintiff.[3]  *See* Baker Aff. (Dkt. No. 53-12) ¶¶ 8-9; Gill Aff. (Dkt. No. 53-13) ¶ 6; Patterson Aff. (Dkt. No. 53-14) at ¶¶ 6-7; Russell Aff. (Dkt. No. 53-15) ¶¶ 3-5.

---

[3]      Conspicuously absent from among defendants' motion submission are affidavits from the remaining two defendants, including Corrections Officer Church and Corrections Officer Vann, denying their involvement in any alleged assault of the plaintiff.

Plaintiff's ambulatory health record entries for the relevant period reflect complaints of back and rib pain registered by the plaintiff at 7:30 pm on June 5, 2005, one hour after having been initially examined for injuries resulting from the fire; during the course of that examination, plaintiff attributed his injuries to having slipped and fallen in the shower. Viglucci Aff. (Dkt. No. 53-6) Exh. E., repeated at (Dkt. No. 55-3) Exhs. 6A-12A.  X-rays taken on June 6, 2005 confirmed that at some point plaintiff suffered a rib fracture.  Viglucci Aff. (Dkt. No. 53-6) Exh. E.  Plaintiff's health records reveal that plaintiff's injuries were treated during the ensuing days with analgesics.  *See id.*

On June 16, 2005, for the first time, plaintiff reported that he was attacked by prison officials on June 5, 2005, at that point blaming his injuries, including the rib fracture, upon the assault rather than a fall in the shower, as previously reported.  Viglucci Aff. (Dkt. No. 53-6) Exh. E; Cruz Decl. (Dkt. No. 55-3) Exh. 12-A.  An examination conducted on that date disclosed the existence of a "baseball size" bruise on plaintiff's right lower back, though no marks were found on his face.[4]  *Id.*  Plaintiff maintains

---

[4]     As will be seen, defendants claim that plaintiff's broken rib and subsequent inquiries were self-inflicted, based upon reports that upon his entry into the mental health unit on June 5, 2006 plaintiff was seen standing on his bunk and jumping onto the floor, throwing himself on his back and flailing.  *See* Plaintiff's

that he initially made a false report regarding the cause of his injuries out of fear of retribution.  *See, e.g.,* Plaintiff's Response to Defendants' Summary Judgment Motion (Dkt. No. 55) ¶ 5.

Plaintiff was issued a misbehavior report on June 5, 2005 by defendant Megan Church, a corrections officer, accusing Cruz of arson, in violation of disciplinary rule 118.10, based upon the fire which occurred on that date in his cell.  Viglucci Aff. (Dkt. No. 53-6) Exh. D.  A second misbehavior report was issued as a result of the incident, also on that same date, by Corrections Officer J. Kissane, charging plaintiff with destruction or loss of property, in violation of disciplinary rule 116.10.  A Tier III disciplinary hearing was conducted on June 16, 2005 in connection with those charges, resulting in a finding of guilt on both counts, and the imposition of a penalty which included one hundred eighty days of disciplinary confinement in the facility's SHU, with a corresponding loss of package, commissary and telephone privileges and an order that plaintiff pay restitution in the amount of $241.00, with an additional recommended loss of good time credits.[5]  *Id.*

_____

Response to Defendants' Summary Judgment Motion (Dkt. No. 55) Exh. D.

[5]    The DOCS conducts three types of inmate disciplinary hearings.  Tier I hearings address the least serious infractions, and can result in minor punishments

6

Plaintiff was issued yet another misbehavior report on June 5, 2005, charging him with harassment (Rule 107.11), making threats to staff (Rule 102.10), and violating facility correspondence regulations (Rule 180.11). Viglucci Aff. (Dkt. No. 53-6) Exh. C.  Those charges stemmed from a letter allegedly sent by the plaintiff to Corrections Officer Church, containing derogatory statements concerning her.  *See id.*  Following a Tier III hearing in connection with that misbehavior report, plaintiff was found guilty of two of the three charges, but acquitted of making threats.  *Id.*  As a consequence, disciplinary confinement, with corresponding lack of package, commissary and telephone privileges, was imposed for a period of ninety days, with an additional recommended loss of good time credits. *Id.*

In addition to complaining of the June 5, 2005 alleged staff assault, plaintiff's complaint also makes allegations, although bereft of specifics, to the effect that in response to his filing of a grievance on July 11, 2005, regarding the assault and actions taken by defendant Church toward him,

---

such as the loss of recreation privileges.  Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit (SHU).  Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits.  *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied*, 525 U.S. 907, 119 S. Ct. 246 (1998).

7

Cruz was issued another misbehavior report.  Complaint (Dkt. No. 1) at p. 10.  Neither plaintiff's complaint, the accompanying supporting affidavit, nor his papers in opposition to the defendants' summary judgment motion provide elaboration regarding this claim, including to identify the issuing officer, recite the infraction charged, or provide information regarding its disposition.

Similarly, in his complaint plaintiff alleges having been denied "chow" on numerous occasions.  Complaint (Dkt. No. 1) Third Cause of Action at p. 12; Cruz Decl. (Dkt. No. 55-3) ¶ 10.  Plaintiff does not indicate the dates, or on how many occasions, his meals were not served, nor once again does he identify the individuals to whom that deprivation is attributable.

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on August 25, 2005.  Dkt. No. 1.  As defendants, plaintiff's complaint names six DOCS employees, including Corrections Officers M. Church, A. Baker, Patterson, and R. Russell, as well as Corrections Sergeant R. Gill and Corrections Lieutenant Vann, all of whom are employed at Upstate.  *Id.*  Plaintiff's complaint contains three causes of action, asserting the use of excessive force, unlawful retaliation,

and cruel and unusual punishment based upon the alleged deprivation of meals.  Issue has since been joined by the defendants' filing of an answer in which they deny the bulk of the material allegations of plaintiff's complaint and set forth various affirmative defenses.  *See* Dkt. Nos. 23, 73.

On April 23, 2007, following the close of discovery, defendants filed a motion for summary judgment.  Dkt. No. 53.  In their motion, defendants argue that no reasonable factfinder could credit plaintiff's version of the relevant events and find liability on the part of any of the defendants with respect to plaintiff's three separate claims.  *Id.*  Plaintiff has since responded in opposition to defendants' motion by the filing on May 4, 2007 of several documents, including an affidavit.[6]  *See* Dkt. No. 55. Defendants' motion, which is now ripe for determination, has been

---

[6]       Plaintiff's submission does not include a statement formally responding to defendants' Local Rule 7.1(a)(3) statement of material facts not in issue.  While the plaintiff's failure to include such a responsive statement among his opposition papers has significant potential adverse consequences, *see* N.D.N.Y.L.R. 7.1(a)(3); *see also Elgamil v. Syracuse Univ.*, No. 99-CV-611, 2000 WL 1264122, at *1 (Aug. 22, 2000) (McCurn, S.J.) (listing cases); *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000), and the importance of this requirement should not be trivialized, I have chosen to overlook this procedural deficiency in light of the plaintiff's other submissions in opposition to the motion and in deference to his *pro se* status.  *See The Travelers Indemnity Co. of Ill. V. Hunter Fan Co.*, No. 99 CIV 4863, 2002 WL 109567, at *7 (S.D.N.Y. Jan. 28, 2002) (citing *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (indicating that a court has broad discretion whether to overlook a party's failure to comply with its local rules).

referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c); *see also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Summary Judgment Standard

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such

10

that a reasonable jury could return a verdict for the nonmoving party."
*Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs
are entitled to special latitude when defending against summary judgment
motions, they must establish more than mere "metaphysical doubt as to
the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith
Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court
to consider whether *pro se* plaintiff understood nature of summary
judgment process).

When summary judgment is sought, the moving party bears an initial
burden of demonstrating that there is no genuine dispute of material fact
to be decided with respect to any essential element of the claim in issue;
the failure to meet this burden warrants denial of the motion.  *Anderson*,
477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83.
In the event this initial burden is met, the opposing party must show,
through affidavits or otherwise, that there is a material issue of fact for
trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553;
*Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve

11

any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

B.   Excessive Force

The centerpiece of plaintiff's complaint in this action is his contention that he was assaulted by the defendants following his transfer into the Upstate mental health unit on June 5, 2005, causing him to suffer injuries which included a broken rib.  Despite plaintiff's sworn statements to the effect that the assault occurred, with some modicum of potential corroboration provided by medical records substantiating that at or about that time plaintiff did in fact suffer injuries which are plausibly consistent with his claim, defendants nonetheless request that the court find plaintiff's version of the events to be incredible as a matter of law, and

12

thus conclude that no reasonable factfinder could find in his favor with regard to that cause of action.

A plaintiff's constitutional right against cruel and unusual punishment is violated by an "unnecessary and wanton infliction of pain." *Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citations and quotations omitted); *Griffen v. Crippen,* 193 F.3d 89, 91 (2d Cir. 1999). The lynchpin inquiry in deciding claims of excessive force against prison officials is "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian,* 503 U.S. 1, 6-7, 112 S. Ct. 995, 998 (1992) (applying *Whitley* to all excessive force claims); *Whitley*, 475 U.S. at 320-21, 106 S. Ct. at 1085 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.), *cert. denied sub nom.*, *John v. Johnson*, 414 U.S. 1033, 94 S. Ct. 462 (1973)).

This is not the typical excessive force case, in which defendants argue that while force may have been exerted by corrections officials against an inmate, it was proportionate to the need to further legitimate penelogical interests and protect the safety and integrity of the facility, or that when utilizing force they did not act with a sufficiently culpable state

13

of mind.  In this instance, defendants assert that the assault, as claimed

by the plaintiff, simply did not occur.  Ordinarily, such a disparity between

the parties' versions of the relevant events would present a classic

example of an issue of material fact of the type which would preclude the

entry of summary judgment.  Despite this defendants nonetheless argue

that plaintiff's version of the events is simply not supportable, inviting the

court to make the required credibility assessment and find, as a matter of

law, that no reasonable factfinder could conclude he was subjected to

excessive force at the hands of the defendants.

While resolution of genuine issues of material fact are ordinarily best

left for resolution by a jury, in certain rare circumstances where conflicting

versions of the relevant events are presented in the record a court may

nonetheless resolve the inconsistencies and grant summary judgment,

particularly where a plaintiff relies exclusively on his or her version of the

relevant events, without corroboration, and in circumstances where there

are inconsistencies, contradictions or incompleteness in the plaintiff's

version.  *See Jeffreys,* 426 F.3d at 554-55; *see also Shabazz v. Pico,* 994

F. Supp. 460, 468-71 (S.D.N.Y. 1998); *see also Dove v. City of New York,*

No. 03-CV-5052, 2007 WL 805786, at *5 (E.D.N.Y. Mar. 15, 2007).  This,

however, is not one of those cases.

Despite defendants' protestations to the contrary, plaintiff's version of the relevant events is not necessarily inconsistent with the evidence in the record, including that concerning his medical injuries. Plaintiff's health records reveal that at 6:30 pm on June 5, 2005, following a fire in his cell, he was examined, with no signs of injury. Cruz Decl. (Dkt. No. 55-3) at Exh. 6A. One hour later, Cruz was again examined, after reportedly having slipped and fallen in the shower, with complaints of rib and back pain. *Id.* While at that time there did not appear to be any visible signs of injury, x-rays ordered on June 6, 2005 revealed the existence of a broken rib. *Id.*; *see also* Viglucci Aff. (Dkt. No. 53-6) Exh. E. While defendants theorize that the broken rib was self-inflicted as a result of plaintiff's antics, observed by prison officials on June 5, 2005 – and there is considerable potential plausibility to that theory – only a jury, having heard all of the evidence, can make that pivotal credibility determination and resolve the issues of fact surrounding whether the assault incident occurred, as claimed by the plaintiff.

In sum, while at different points in time the plaintiff has undeniably offered conflicting versions of the relevant events of June 5, 2005, he has

also provided an explanation for having done so, and his claim of having

sustained injury on that date as a result of an assault is potentially

somewhat corroborated by the existence of a visible bruise and x-rays

revealing a broken rib.  Under these circumstances I recommend against

invoking the *Jeffreys* exception, and in favor of denying the portion of

defendants' motion challenging the sufficiency of plaintiff's excessive force

claims.

> C.    Retaliation

In his complaint plaintiff also asserts a claim of retaliation, based

principally upon his filing of a grievance on July 11, 2005, allegedly

resulting in the subsequent issuance of a misbehavior report.  Complaint

(Dkt. No. 1) at p. 10.  Observing that such claims are "prone to abuse",

see *Flaherty v. Cohen,* 713 F.2d 10, 13 (2d Cir. 1983), and that the record

is lacking in specifics regarding the grievance and ensuing misbehavior

report, defendants seek dismissal of this claim as well.[7]

---

[7]     Plaintiff's complaint, generously construed, could be interpreted as also alleging that defendants Gill and Church retaliated against him for filing grievances and complaints against him by their issuance of false misbehavior reports on June 5, 2005. While the mere filing of false misbehavior reports, without more, is not actionable, *see Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982, 108 S. Ct. 1273 (1988)), such conduct, if committed in retaliation for an inmate having engaged in protected activity, is potentially actionable under the First Amendment.  *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988).  In this case, however, plaintiff is not well-positioned to argue that

In order to state a *prima facie* claim under section 1983 for

retaliatory conduct, a plaintiff must advance non-conclusory allegations

establishing that 1) the conduct at issue was protected; 2) the defendants

took adverse action against the plaintiff; and 3) there was a causal

connection between the protected activity and the adverse action – in

other words, that the protected conduct was a "substantial or motivating

factor" in the prison officials' decision to take action against the plaintiff.

*Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287,

97 S. Ct. 568, 576 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir.

2007); *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on*

*other grounds*, *Phelps v. Kapnolas*, 308 F.3d 180 (2d Cir. 2002).  If the

plaintiff carries this burden, the defendants must show by a

preponderance of the evidence that they would have taken action against

the plaintiff "even in the absence of the protected conduct."  *Mount*

*Healthy*, 429 U.S. at 287, 97 S. Ct. at 576.  If taken for both proper and

improper reasons, then, state action may be upheld if the action would

have been taken based on the proper reasons alone.  *Graham v.*

---

the misbehavior reports contained false allegations since Tier III hearings conducted in
connection with both misbehavior reports issued on June 5, 2005 resulted in at least
partial findings of guilt.

17

*Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citations omitted).

As can be seen, evaluation of claims of retaliation is a particularly fact-laden exercise, since such claims generally revolve around both the engaging in protected conduct, and establishment of a nexus between that conduct and adverse action later taken.  In this instance plaintiff's retaliation claims have been alleged in only conclusory form, and are not supported by evidence in the record establishing a nexus between protected activity and the adverse actions complained of.  The specific instance cited, for example, fails to disclose the temporal relationship between the July 11, 2005 grievance and the ensuing misbehavior report, nor does it identify the corrections official who issued the report.[8]  Since, in response to defendants' motion, plaintiff has not come forward with evidence to support his retaliation claim, I recommend that it be dismissed as a matter of law.

    D.    <u>Food Deprivation</u>

---

[8]     Since personal involvement in conduct resulting in a constitutional violation is a pre-requisite to a finding of liability, plaintiff's failure to allege their participation in the issuance of a misbehavior report could provide a separate, independent basis for dismissal of plaintiff's retaliation claims against the six named defendants.  *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).

_____In his third and final cause of action plaintiff alleges, once again in wholly conclusory form, that he was denied food by the defendants while at Upstate.  Defendants seek dismissal of this claim based upon plaintiff's failure to demonstrate the facts from which a reasonable jury could conclude that his Eighth Amendment rights were violated.

Undeniably, the Eighth Amendment requires that prisoners receive food that is adequate to maintain health; it need not, however, be either tasty or aesthetically pleasing.  *LeMaire v. Maass,* 12 F.3d 1444, 1456 (9th Cir. 1993) (citing *Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977)).  When corrections officials deny a prison inmate the measure of food necessary to maintain health, the Eighth Amendment's prohibition against cruel and unusual punishment is implicated.  *Robles v. Coughlin*, 725 F.2d 12, 15-16 (2d Cir. 1983).  If, on the other hand, meals, are withheld from a prisoner on an isolated basis, such conduct, though not necessarily to be condoned, does not typically rise to a level of constitutional significance.  *See Cunningham*, 567 F.2d at 659-60 (remanding case for a determination of nutritional adequacy where complaint alleging that prisoners were served only one meal per day had been dismissed); *Moss v. Ward*, 450 F. Supp. 591, 596-97 (W.D.N.Y.

19

1978) (indicating that "being deprived of one or two meals might not be cruel and unusual punishment", but finding in this case that deprivation of food for four consecutive days was an unconstitutionally disproportionate punishment for violation of a disciplinary rule).

In the face of defendants' pending motion for summary judgment, plaintiff has failed to come forward with anything of evidentiary value establishing that he was in fact deprived of food, not by his own actions but rather those of prison officials, nor has he identified the prison officials involved and the frequency with which the deprivation occurred.  Indeed, as defendants assert, the only specifics alleged in plaintiff's complaint in connection with his third cause of action is that Cruz filed a grievance asserting that he was told by another corrections officer that defendant Church would not feed him.  *See* Complaint (Dkt. No. 1) at p. 6.  Plaintiff does not follow that allegation with any claim that defendant Church actually denied him any meals, nor does he identify the persons responsible for withholding the other meals to which he makes reference in connection with that claim.[9]

---

[9]       The parties' versions regarding the denial of food are to a degree in conflict.  Plaintiff asserts, as one of the reasons why he opted to light a fire in his cell, that he was not being fed.  *See, e.g.,* Complaint (Dkt. No. 1) at p. 15.  Defendants counter that the fact that plaintiff may not have received certain meals stems from

Under these circumstances I conclude that no reasonable factfinder could determine that defendants have violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by denying him meals.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

Having carefully reviewed the record in light of defendants' arguments, I find that there are genuine issues of material fact which must be resolved by a jury before plaintiff's excessive force claim against the six named defendants can be adjudicated, and therefore recommend against dismissal of that claim at this procedural juncture.  I further recommend, however, that the remaining portions of defendants' summary judgment motion be granted and that plaintiff's second and third causes of action, alleging retaliation and food deprivation, respectively, be dismissed

---

plaintiff's refusal to obey an order to retreat to the back of his cell in order to be served his food.  *See, e.g.,* Viglucci Aff. (Dkt. No. 53-6) Exh. C, 6/5/05 recommendation from Lt. Martin to Sgt. Gill.  This fact dispute is not material, however, since in response to defendants' motion the plaintiff has failed to allege food deprivation of sufficient proportions to support an Eighth Amendment claim.  *See, e.g.*, *Robles* ("While no court has explicitly said that denial of food is a per se violation of a prisoner's Eighth Amendment rights, under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension.") (citations omitted); Moss, 450 F. Supp. at 596-97.

as a matter of law.[10]  Based upon the foregoing, it is hereby

RECOMMENDED, that defendants' motion for summary judgment (Dkt. No. 53) be GRANTED, in part, and that plaintiff's second and third causes of action be DISMISSED, but that defendants' motion otherwise be DENIED, and that plaintiff's excessive force claim be set down for trial.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

The clerk is directed to promptly forward a copy of this order to the plaintiff by regular mail and defendant via electronic means.

---

[10]     Large segments of plaintiff's complaint and submissions to the court in opposition to defendants' summary judgment focus upon allegations of verbal harassment of the plaintiff by the six named defendants and other corrections employees at Upstate.  Such allegations, without more, do not rise to the level of constitutional significance required to support a claim under 42 U.S.C. § 1983.  *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986); *Beckles v. Bennett*, No. 05 Civ. 2000, 2008 WL 821827, at *23 (S.D.N.Y. Mar. 26, 2008).

Dated:     June 17, 2008
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge